UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:13-212-WOB-CJS

KATHY DIANE GARRETT                                                    PLAINTIFF

v.                            **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                                        DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Kathy Diane Garrett brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title XVI of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits. As explained below, the ALJ's decision was supported by substantial evidence. It will therefore be **recommended** that Plaintiff's Motion for Summary Judgment be **denied**, and the Defendant's Motion for Summary Judgment be **granted.**

I.     STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work

activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 12, 2011, Plaintiff filed a Title XVI application for supplemental security income. (Administrative Record (A.R. at 49)). Plaintiff claims disability beginning February 1, 2011, based on lupus, asthma, severe allergies, and super ventricular tachardia. (*Id.* at 92). She was thirty-five years old at the alleged disability onset date, and lives with her mother and brother. (*Id.* at 67). She has a high school degree and attended two years of college at the University of Kentucky. (*Id.* at 68-69). She then went to Hazard Community College where she received a certified nurse assistant certificate in 2002. (*Id.* at 69). Plaintiff worked as a certified nurse assistant from 2003 until 2007 at a nursing home. (*Id.*). She stopped working in 2007 due to a broken wrist. (*Id.* at 70).

Plaintiff's claim was initially denied on July 8, 2011, and upon reconsideration on September 16, 2011. (*Id.* at 49). On October 14, 2011, Plaintiff filed a written request for hearing, and on July 31, 2012, a video hearing was held before the ALJ with Plaintiff and her attorney appearing in Hazard, Kentucky. (*Id.*).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.*). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since her April 12, 2011, application date. (*Id.* at 51). At step two, the ALJ determined that Plaintiff had the following severe impairments: (1) obesity, and (2) bilateral lumbar paraventebral muscle tenderness with joint pain and swelling. (*Id.*). The ALJ considered Plaintiff's complaints of hypertension, hyperlipedemia, gatroesophageal reflux disease, hypothyroidism, sinusitis, and tachycardia, but concluded that Plaintiff failed to establish that those impairments were severe within the meaning of 20 C.F.R. § 416.921. (*Id.*). The ALJ also found at step two that Plaintiff's mental impairments of affective disorder and anxiety disorder, singly or in combination, did not cause more than minimal limitations in Plaintiff's ability to perform basic work activities and were therefore non-severe. (*Id.* at 51-52).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity set forth in any of the listed impairments under the applicable Federal Regulations. (*Id.* at 53). At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functional capacity (RFC) to perform work at the medium exertion level with additional non-exertional limitations. (*Id.*). Specifically, the ALJ found Plaintiff had the following RFC:

> [Plaintiff can] lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk a total of six hours in an eight hour workday; sit a total of six hours in an eight hour workday; avoid concentrated exposure to fumes, odors, dusts, gases or poor ventilation due to her breathing problems and severe allergies. She should avoid exposure to all hazards such as unprotected heights and dangerous machinery; avoid extended exposure to sunlight secondary to diagnosis of lupus, significant reactions to house dust mites and pollen.

(*Id.*). In his analysis, the ALJ found that Plaintiff was not entirely credible with regard to her allegations of limitations and overall disability because the evidence of record did not provide a substantial basis for her allegations. (*Id.* at 56). The ALJ further noted that Plaintiff was unable to perform any of her past relevant work. (*Id.* at 57). Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At step five, the ALJ considered the claimant's age, education, work experience, and RFC, and adopted the opinion of an impartial vocational expert (VE) that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*). Specifically, the VE opined that an individual of Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as kitchen helper, laborer, or hand packer. (*Id.*).

On August 31, 2012, the ALJ denied Plaintiff's claim upon concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 49). The Appeals Council upheld that denial on May 7, 2013. (*Id.* at 1). On July 4, 2013, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence. (*See* R.1). Both Plaintiff and Commissioner have filed Motions for Summary Judgment.

On appeal, Plaintiff argues that the ALJ improperly assessed the medical evidence of record. Plaintiff contends that the ALJ assigned improper weight to the medical opinions of her treating

physicians and nonexamining state agency reviewers. Plaintiff further argues that the Appeals Council erred in not finding her disabled upon a review of new medical evidence. Each of these arguments is addressed below.

## III. ANALYSIS

### A. The ALJ's assessment of the medical evidence was proper.

The bulk of Plaintiff's briefing takes issue with the ALJ's assessment of the medical evidence. Specifically, Plaintiff argues that the ALJ disregarded the "substantial and uncontested body of medical evidence" submitted by her treating physicians, and failed to provide "good reasons" for doing so. Plaintiff also complains that the ALJ improperly gave the medical opinions of state agency consultants controlling weight. Having reviewed the ALJ's decision and the administrative record, for the reasons set forth below, the Court concludes that the ALJ's assessment of the medical evidence was proper.

#### 1. The ALJ properly weighed the relevant medical opinions of Plaintiff's treating physicians.

Plaintiff contends the ALJ disregarded the well-documented physical and mental findings supplied by Plaintiff's treating medical sources. (R. 16-1, at 13). Plaintiff alleges that this failure by the ALJ to give sufficient weight to the opinions of her treating physicians is proof that the ALJ failed to properly apply the treating physician rule set forth in 20 C.F.R. § 416.927 and delineated in *Wilson v. Commissioner of Social Security*, 378 F.2d 541, 544 (6th Cir. 2004).[1]

---

[1]Although Plaintiff cites to § 404 regulations for disability benefits throughout her brief, she is actually appealing the denial of her application for supplemental security income under § 416–Supplemental Security Income for the Aged, Blind, and Disabled. The Court will assume that Plaintiff intended to base her arguments on that applicable law, and will therefore reference the appropriate Title XVI regulations for the remainder of this Report and Recommendation.

Generally, in evaluating opinion evidence under 20 C.F.R. § 416.927(c), the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Under the treating source rule, an ALJ is required to adopt treating source medical opinions in one narrowly-defined circumstance: where "the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." Soc. Sec. Ruling 96-2p. Only then does the rule dictate that an ALJ cannot substitute his own judgment for the treating source's opinion as to the nature and severity of an impairment. *Id.*; *see also* 20 C.F.R. § 416.927(c)(2). The Sixth Circuit has defined medical opinions as, "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis, and prognosis." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). If the ALJ determines that a treating physician's medical opinion does not meet these conditions, he may discount that opinion but must provide "good reasons" for doing so. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-40 (6th Cir. 2010).

Plaintiff argues that her complaints of lupus, cardiac condition, and gastrointestinal issues are fully corroborated by the uncontested medical opinions supplied by her treating physicians, and that the ALJ failed to give these opinions controlling weight. (R. 16-1, at 11). However, Plaintiff does not provide record citations where any of her treating physicians gave an opinion or judgment about the nature and severity of Plaintiff's claimed impairments.[2] Although Plaintiff's Motion

---

[2] Plaintiff's only citation in support of this argument states, "[w]hen he [sic] physical and non-exertional impairments were fairly considered by the Vocational Expert, not only was [Plaintiff] unable to return to her past work, but given her limitations, there was no available work that she could perform (T.R.

7

devotes substantial space to recitations of the record in setting forth the facts of her case, she does not connect specific facts to her arguments.[3]

The Court's review of the administrative record reveals scant objective evidence that Plaintiff medically has lupus. Lupus is mentioned in Dr. Abordo's medical record dated April 1, 2011, just ten days before Plaintiff filed her application for disability. The medical record documents that "[Plaintiff] was told many years ago that she has Lupus. She is concerned that Lupus may have reoccurred and she wants it rechecked." (*Id.* at 303). Another entry the same day states, "[s]he is concerned that her Lupus may have reoccurred and is causing her symptoms. Patient was advised of cost of labs by our lab personnel and she still wants the tests done." (*Id.* at 307). On April 7, 2011, Plaintiff underwent the requested blood testing. (*Id.* at 307-09). However, Dr. Abordo's subsequent treatment records do not contain any explanation of test results to suggest a finding of lupus or any statement that Plaintiff had experienced a reoccurrence of symptoms. (*Id.* at 300-02). Other references to lupus in the medical record appear in the "past medical history" of the records, and contain no indication of ongoing treatment for lupus.[4] Contrary to Plaintiff's assertion, the

---

89-90)." (R. 16-1, at 14). Plaintiff cites not to the VE's opinion in light of the ALJ's RFC determination, but instead to the VE's response when the ALJ asked if there were jobs that Plaintiff could perform *if the ALJ gave total complete credibility to the testimony of the Plaintiff **and** all the impairments she testified to were supported by credible medical evidence*. (emphasis added). As discussed above, the ALJ concluded that Plaintiff's testimony was not credible to the extent that it was unsupported by credible medical evidence. The above reference provides no support to Plaintiff's claim that the ALJ ignored the opinions of Plaintiff's treating physicians.

[3] The Scheduling Order entered in this matter on September 30, 2013, informed the parties that they must provide the Court with specific citations to the administrative record to support their arguments. The Order also cautioned that the Court would not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments. (*See* Order at ¶ (3)(c), entered in this case at R. 10).

[4] *See, e.g.*, A.R. 317, 523, 544, 548, 584, 587, 605, 609, and 623.

administrative record contains no objective evidence that Dr. Abordo or any other treating physician ever diagnosed Plaintiff with lupus, or otherwise indicated the existence of more severe physical restrictions than were found by the ALJ in his RFC determination.

Plaintiff's argument mis-characterizes Dr. Abordo's medical records and treatment notes as a treating medical source "opinion" that is entitled to controlling weight.[5] In his analysis, the ALJ addressed Plaintiff's treating physician records at great length. (A.R. at 55-56). The records contained treatment notes and medical records from Dr. Abordo, who treated Plaintiff for allergies, hypertension, sinusitis, anxiety, depression, and other common maladies. (*Id.* at 55). However, none of Dr. Abordo's records rendered an opinion as to Plaintiff's functional limitations. The ALJ specifically noted that "[a]s for opinion evidence, none of the claimant's treating physicians have stated that she is unable to work." (*Id.* at 55-56). While the records of Plaintiff's treating physician are certainly relevant medical evidence, they are not medical "opinions" that must be weighed according to 20 C.F.R. § 416.927(d)(2). For this same reason, the treating source rule is not triggered.

Plaintiff attempts to make a similar argument regarding her cardiac condition and gastrointestinal complaints. (R. 16-1, at 11). These claims need not be addressed by the Court, because Plaintiff never provided any support for her contention. Plaintiff fails to direct the Court's attention to any support in the record and her argument lacks the specificity required on appeal.

---

[5] In support of her claim that the ALJ ignored the "uncontested" diagnosis of lupus made by her treating physician, Plaintiff states: "Dr. Abordo explained that [Plaintiff] had to be on the medication for lupus, and has tried to treat the side effects with other medications, but they tend to not be of much help (T.R. 74)." (R. 16-1, at 4). Plaintiff's citation does not refer to objective medical records or even the testimony of Dr. Abordo himself, but instead cites to her own statements made during her testimony at the administrative hearing. This testimony fails to satisfy the definition of "medical opinions" set forth in *Gayheart*, 710 F.3d at 375.

9

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006). The Court will not engage in an "open-ended" review of the entire record to determine what evidence–if any–may arguably be inconsistent with the decision of the ALJ. (*Id.*).

Plaintiff's claim ultimately fails because she cannot identify any of the "uncontested medical evidence supplied by [her] treating physicians which corroborates [her] multiple symptoms and complaints." (R. 16-1, at 7). Plaintiff cites only to her own testimony and medical history that she provided to her treating physicians. This evidence, although relevant to the ALJ's overall determination, does not by itself satisfy Plaintiff's burden of proving disability and more specifically, her present argument that the ALJ failed to give the opinions of her treating physicians controlling weight.

### 2. The ALJ properly weighed the medical opinions of state agency consultants.

Plaintiff also takes issue with the ALJ's assessment of medical opinions provided by state agency consultants. Although Plaintiff's briefing on the issue consists primarily of conclusory statements and allegations, the Court will attempt to address each of Plaintiff's complaints.

The Court will first address Plaintiff's claim that the ALJ improperly assigned controlling weight to the opinions of state agency consultants. As discussed in Section 1 above, controlling weight is only appropriate for medical opinions that fall within narrowly-defined parameters. As Plaintiff correctly notes, the opinions of nonexamining state agency consultants are not entitled to controlling weight. (R. 16-1, at 2). However, opinions not entitled to controlling weight are not ignored by the ALJ altogether. Regardless of its source, every medical opinion is considered by the

ALJ in evaluating a claimant's social security claim. 20 C.F.R. § 416.927(c). All evidence from nonexamining sources is considered as opinion evidence. 20 C.F.R. § 416.927(e).

In the present case, Plaintiff's initial claim for Supplemental Security Income was reviewed by Justin Parker, a Single Decisionmaker (SDM).[6] (A.R. at 92-101). The SDM reviewed Plaintiff's medical records and opinion evidence, as well as questionnaires answered by Plaintiff and her husband. (*Id.* at 93-94). Upon initial review of Plaintiff's claim for social security benefits, the SDM found that Plaintiff suffered from the severe impairment of systemic lupus erythematosus. (*Id.* at 96). The SDM completed a physical RFC assessment, indicating that Plaintiff was limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently; and standing, sitting, or walking for a total of six hours in an eight hour work day. (*Id.* at 98-99). The SDM also recommended that Plaintiff "[a]void concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. due to breathing problems and severe allergies." (*Id.* at 99). Based on his review of the relevant evidence, the SDM ultimately concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 101).

After Plaintiff's claim was initially denied, Plaintiff filed her Request for Reconsideration. (*Id.* at 118-120). Plaintiff's claim was then independently reviewed by state agency physicians, Drs. Reed and Warren, and state disability examiner, Corey Alsop. (*Id.* at 112, 121). Like the SDM, Dr.

---

[6] Kentucky is a member of the Social Security Administration's Single Decisionmaker (SDM) pilot. The SDM model authorizes disability examiners to make certain initial determinations without requiring a medical or psychological consultant's signature. 20 C.F.R. § 416.1406(b)(2). If a claimant disagrees with the initial disability determination, she can file an appeal within 60 days from the date of determination notification. In Kentucky, the reconsideration step is the first step in the claimant's appeals process. *See* OFFICE OF THE INSPECTOR GENERAL, SOC. SEC. ADMIN., A-01-12-11218, SINGLE DECISIONMAKER MODEL–AUTHORITY TO MAKE CERTAIN DISABILITY DETERMINATIONS WITHOUT A MEDICAL CONSULTANT'S SIGNATURE 2, n.9 (2013).

Warren found that Plaintiff suffered from the severe impairment of lupus. (*Id.* at 106). Based on the same evidence, Dr. Reed affirmed the SDM's initial RFC, with the additional limitation that Plaintiff should "[a]void extended exposure to sunlight secondary to [diagnosis] of lupus." (*Id.* at 110). Upon reconsideration, the state agency consultants again concluded that Plaintiff was not disabled for Social Security purposes. (*Id.* at 121-23).

Plaintiff provides no support for her conclusory allegation that the ALJ assigned controlling weight to opinions from the state agency consultants. Contrary to Plaintiff's assertion, the ALJ specifically noted that the opinions of the state agency consultants were not entitled to controlling weight. (*Id.* at 56-57). The ALJ explained the proper standard of review: opinions from state agency consultants must be considered and weighed as those of highly-qualified physicians who are experts in the evaluation of the medical issues in disability claims. (*Id.*) (*citing* Soc. Sec. Ruling 96-6p) (*see also* 20 C.F.R. § 416.927(e)(2)(I)). Having considered the objective medical evidence, the medical opinions of the state agency consultants, and Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 58). This conclusion, as the ALJ noted, was supported by the state consultants' opinions that Plaintiff was not disabled. (*Id.* at 56). Therefore, the ALJ properly weighed the opinions of the state consultants as opinion evidence according to the procedural requirements set forth in 20 C.F.R. § 416.927(e).

Plaintiff also makes a cursory argument that the ALJ "disregarded" the state consultants' finding that Plaintiff's lupus was a severe impairment. (R. 16-1, at 13). Further, Plaintiff asserts that the ALJ was required to offer reasons why that opinion was rejected. (R. 16-1, at 6). Plaintiff's argument fails for two reasons. First, the ALJ did not reject or ignore the state consultants' finding;

on the contrary, he incorporated the opinions into his RFC determination. (*Id.* at 53 ("[A]void extended exposure to sunlight secondary to diagnosis of lupus.").

Second, although the ALJ did not explicitly articulate "good reasons" for the weight he assigned to the opinions of the state agency consultants, there exists no regulation requiring him to do so. In *Smith v. Commissioner of Social Security*, 482 F.3d 873 (6th Cir. 2007), the Sixth Circuit held that the Social Security Act's requirement that ALJ's "give good reasons" for the weight given to medical opinions applies only to *treating* sources. *Id.* at 876. In reaching this conclusion, the Sixth Circuit emphasized that the applicable regulations classify medical sources into three types: nonexamining sources, nontreating sources, and treating sources–in recognition "that not all medical sources need be treated equally." *Id.* at 875. Therefore, although the Society Security Administration promises claimants that ALJs "will evaluate every medical opinion [they] receive," 20 C.F.R. § 416.927(d), the promise to articulate "good reasons" for the weight given to a medical opinion extends only to the opinions of treating sources. *See Smith*, 482 F.3d at 876.

As one-time consultants, the state agency consultants are properly classified as nonexamining sources under the regulations. 20 C.F.R. § 416.902 ("Nonexamining source . . . includes State agency medical and psychological consultants, other program physicians and psychologists, and medical experts or psychological experts we consult."). Consequently, the ALJ was not required to articulate any reasons for the weight he accorded the state agency consultants' opinions. Having reviewed the ALJ's treatment of the nonexamining source opinions, the Court finds no error.

**B.    Plaintiff's new evidence does not warrant remand.**

Plaintiff's summary of the evidence also references new medical reports dated after the ALJ's August 31, 2012, decision, which she suggests shows a post-hearing diagnosis of Crohn's disease.

13

(R. 16-1, at 6). However, Plaintiff does not articulate how these medical records are relevant to her appeal, except for her general assertion that the records are part of the "substantial and uncontested body of medical evidence in support of her claim that she became disabled on or around February 1, 2011." (*Id.*). Plaintiff also fails to note that these medical records were considered by the Appeals Council before it declined to review the ALJ's decision. (A.R. at 2). While a court may consider evidence first submitted to the Appeals Council to determine whether the evidence satisfies the criteria for remand under 42 U.S.C. § 405(g), the court cannot consider the new evidence for purposes of substantial evidence review. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Foster v. Halter*, 279 F. 3d 348, 357 (6th Cir. 2001). Thus, the issue before the Court is whether a sentence six remand is appropriate.

For remand under sentence six of 42 U.S.C. § 405(g), a claimant must show that the evidence submitted to the Appeals Council is new and material, and that the claimant had good cause for not presenting the evidence to the ALJ. *Ferguson*, 628 F.3d at 276. In *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990), the Supreme Court held that evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Here, there is no question that the medical records dated February 26 to April 4, 2013, are new evidence, and Plaintiff had good cause for not introducing them prior to the ALJ's decision because they did not yet exist. The new evidence, however, must also be material. To be "material" within the meaning of § 405(g), the new evidence (1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964,

14

966 (6th Cir. 1986). Evidence that plaintiff's condition has deteriorated since the Commissioner's decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712. Further, a diagnosis, in and of itself, is insufficient to establish additional limitations. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff suggests, without supporting evidence or documentation, that the post-hearing evidence of her diagnosis of Crohn's in March of 2012,[7] was the cause of her symptoms for the years prior to the administrative hearing. (R. 16-1, at 6). Plaintiff's claim, however, is purely speculative as the new medical records do not offer a retrospective assessment of Plaintiff's functional limitations prior to her apparent Crohn's diagnosis. Nothing in the new records establish that Plaintiff's emergency room diagnosis was relevant to Plaintiff's condition before the ALJ's decision. In addition, the diagnosis of Crohn's does not evidence whether Plaintiff's subjective complaints and limitations at the time of the ALJ's decision were, in fact, due to Crohn's disease. Thus, the new evidence is immaterial to the appropriate time period at issue here.

Even assuming, arguendo, that Plaintiff's new evidence was relevant and probative of her condition before the ALJ's decision, nothing in the new evidence establishes a probability that the ALJ would have reached a different decision had the evidence been considered. The emergency room records do not indicate the existence of more severe physical restrictions than were found by

---

[7] Portions of the new records include emergency room records. Plaintiff states that these emergency room records reflect a "working diagnoses" [sic] of Crohn's. While the emergency room notes indicate that Plaintiff was diagnosed with Crohn's, nausea, and vomiting, a review of the emergency room notes in their entirety reveals that those diagnoses were made based on the patient's own self-reported history of Crohn's disease. (A.R. at 21-22).

the ALJ in the RFC determination. A diagnosis, by itself, does not serve to establish additional limitations. *Higgs*, 880 F.2d at 863.

As noted above, a claimant carries the overall burden of establishing that she is disabled, and that burden only shifts to the Commissioner in establishing whether the claimant can perform other work existing in the national economy. Plaintiff here has provided no objective evidence in support of her otherwise unsubstantiated claims of disability. In this regard, Plaintiff has failed to meet her burden.

### IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Accordingly, **IT IS RECOMMENDED** that:

1. The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2. Plaintiff's Motion for Summary Judgment (R. 16) be **denied**;

3. Defendant's Motion for Summary Judgment (R. 17) be **granted**; and,

4. Judgment be entered and this matter be **stricken** from the active docket of the Court.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 150 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (*citing Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded

no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

Dated this 18th day of November, 2014.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\13-212-WOB Garrett R&R.wpd